**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JOYCE L. GALIOTO,**

                              **Plaintiff,**                  **06-CV-0229A(Sr)**

v.

**DANIEL KAMIN, Individually and**
**d/b/a KAMIN REALTY CO.,**

                              **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #4.

Currently before the Court is plaintiff's motion for partial summary judgment on the issue of liability and dismissal of the affirmative defenses of assumption of risk and comparative negligence. Dkt. #24. For the following reasons, it is recommended that plaintiff's motion for partial summary judgment and dismissal of the affirmative defenses of assumption of risk and comparative negligence be denied.

## FACTUAL BACKGROUND

By this action, plaintiff, Joyce L. Galioto, is seeking to recover damages for personal injuries she sustained on July 13, 2005 while walking in the parking lot of Yorkshire Plaza, Route 14, Yorkshire, New York. Dkt. #1, pp.6-8. At all times relevant

to the allegations in plaintiff's complaint, defendant, Daniel Kamin, individually and d/b/a Kamin Realty Co., was the owner of the property known as the Yorkshire Plaza shopping center located on Route 14, Yorkshire, New York. Dkt. #3, ¶ 3. Plaintiff's action was originally commenced in New York State Supreme Court, Cattaraugus County and was thereafter removed to the United States District Court, Western District of New York on the basis of diversity jurisdiction. Dkt. #1. On August 8, 2007, the parties filed a Stipulation which states, in its entirety:

> IT IS HEREBY STIPULATED AND AGREED between the parties as follows:
>
> 1. Defendant was on July 13, 2005, the owner of real property, commonly known as the Yorkshire Plaza shopping center, located on Route 14, in the Town of Yorkshire, County of Cattaraugus, State of New York.
>
> 2. As of and prior to July 13, 2005, defendant had the duty to maintenance [sic] and repair the parking lot at Yorkshire Plaza.
>
> 3. As of July 13, 2005, the parking lot of Yorkshire Plaza had potholes and cracks and was in need of repair for a sufficient length of time so as to provide constructive and/or actual notice to defendant that the parking lot was in need of repair, and defendant was negligent in failing to repair the parking lot prior to July 13, 2005.
>
> 4. Notwithstanding paragraphs "1" through "3" above, plaintiff's comparative negligence is still at issue as alleged in the affirmative defenses, and plaintiff must prove that defendant's negligence was the proximate cause of any injuries she allegedly suffered and the nature and extent of her injuries.

Dkt. #20. Thereafter, plaintiff filed the instant motion for partial summary judgment and

to dismiss the affirmative defenses of assumption of risk and comparative negligence. Dkt. #24.

Plaintiff claims that on July 13, 2005, while she was crossing the Yorkshire Plaza parking lot and pushing a shopping cart, her left foot caught the edge of a pothole and turned into the pothole. Dkt. #28, ¶ 1. Specifically, during her deposition, plaintiff testified that on July 13, 2005, she had been shopping at the Save A Lot in Yorkshire Plaza and "after I was done shopping, I walked out of the store and I had my cart really stacked because I had done more shopping than normal because they had meat on sale ..." Dkt. #30, pp.29-30. Indeed, plaintiff further testified that she had approximately three to four boxes weighing about sixty (60) pounds in her shopping cart that extended above the top of the cart approximately eight to ten inches. Dkt. #30, p.66.

Before July 13, 2005, plaintiff testified that she was aware that there were potholes in the Yorkshire Plaza parking lot and that the potholes caused her concern. Dkt. #30, p.31. Moreover, plaintiff testified that prior to July 13, 2005, she had expressed her concerns about the potholes in the parking lot to Dave Horrigan of Save A Lot and to her husband. *Id*. at pp.31-32 and p.38. Plaintiff further testified that on July 13, 2005, prior to entering the Save A Lot store, she observed potholes and "all kind [sic] of different fractures in the cement, in the pavement." *Id*. at p.48. However, plaintiff explained that she took a different route out of the Save A Lot to her pickup truck than she had taken into the Save A Lot. *Id*. Notwithstanding the foregoing,

plaintiff testified that although she had been to the Yorkshire Plaza many times and saw many of the potholes, she could not be certain that she had seen the particular pothole she fell into before July 13, 2005.  *Id*. at p.30.

At the time of the incident, plaintiff testified that she was pushing her shopping cart down the driving lane in front of the store, rather than walking in a diagonal direction across the parking lot as she had done when she was entering the store.  Dkt. #30, pp.56-62.  Specifically, plaintiff described that as she exited the store her pickup truck was parked in the driving lane to the left of the entrance.  *Id*. at p.56. Plaintiff further described the following route she had begun to take to return to her pickup truck, plaintiff walked down the driving lane depicted in Defendant's Exhibit 21 (Dkt. #31, pp.45-47) and had intended to turn left and cross over the marked parking areas for vehicles to access her pickup truck in the next driving lane.  *Id*. at pp.56-57. Plaintiff explained that the area where she turned left to go to her pickup truck was not depicted in Defendant's Exhibit 21 (Dkt. #31, pp.45-47), rather, it was depicted in Defendant's Exhibit 22.  *Id*. at pp.57-58.  Plaintiff further explained that because of how other cars were parked in the parking lot she could not get her cart through the parked cars so she had to cut across the parking spaces beyond where her pickup truck was parked.  *Id*. at p.59.  Plaintiff testified that just after she turned left to cross the parking spaces, she stepped on the edge of a pothole and rolled her ankle.  *Id*. at pp.66-67.

Carol Conrad, a witness to the incident, described a different location in the parking lot where plaintiff fell. Dkt. #31, pp.1-41. Specifically, Ms. Conrad testified that she observed plaintiff walk straight out of the Save A Lot and proceed down the driving lane directly outside the store. Dkt. #31, p.15. Moreover, Ms. Conrad described that she saw plaintiff fall in the driving lane directly in front of the Save A Lot store, nearly in front of the van in which Ms. Conrad was sitting. Dkt. #31, pp.11-16. In fact, during her deposition, Ms. Conrad marked on Defendant's Exhibit 21 (Dkt. #31, pp.45-47) with a pen the approximate location where plaintiff fell. Dkt. #31, pp.45-47. Ms. Conrad further testified that in the area where plaintiff fell there were many potholes. *Id*. at pp.17-18. However, Ms. Conrad was not able to identify the specific pothole that caused plaintiff to fall. *Id*.

In support of her motion for partial summary judgment, plaintiff has submitted the Declaration of her treating physician, Paul J. Lapoint, D.O. Dkt. #26. Annexed to Dr. Lapoint's Declaration are his reports which reflect that plaintiff's injuries include "a fracture of the tip of the distal fibula and an osteochondral lesion in the anteromedial talus of the left ankle." Dkt. #26, ¶ 4. In his Declaration, Dr. Lapoint opined,

> [i]t is my opinion within a reasonable degree of medical certainty that her fall as a result of the defective pothole condition in the subject parking lot on July 13, 2005 was a proximate cause of injuries to Joyce Galioto's left ankle, including a fracture of the tip of the distal fibula and an osteochondral lesion in the anteromedial talus of the left ankle.

*Id*. In addition, plaintiff submitted the reports of defendant's expert, Lawrence B. Bone, M.D. and argues that Dr. Bone's reports confirm that plaintiff's injury was caused "when she stepped in the side of a pothole in a parking lot of a store." Dkt. #25, pp.105-109. Specifically, Dr. Bone concluded in his December 27, 2006 report that plaintiff had sustained an "[i]nversion injury to her left ankle, which resulted in an avulsion fracture of the tip of the fibula, and an anterior medial talar injury consistent with a bone bruise and possible small grade 2 osteochondral injury." Dkt. #25, p.107. Based on the foregoing, plaintiff summarily concludes that "[t]here can be no dispute that plaintiff caught her left foot in a pothole in the subject parking lot, and that such pothole was a longstanding condition." Dkt. #27, p.6.

## DISCUSSION AND ANALYSIS

### Application of New York Law

Where, as here, jurisdiction is based on diversity of citizenship of the parties, this Court must apply the substantive law of the forum state, *to wit*, New York. "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994), *citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in an affidavit). The Supreme Court in holding that the clear and convincing standard of proof should be taken into account in ruling on summary judgment motions was not intended to "denigrate the role of the jury ... and [ ] by no means [did it] authorize[ ] a trial on affidavits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To the contrary, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge ...." *Id*.  Indeed, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*.

**<u>Negligence</u>**

The parties do not dispute that New York substantive law applies to this outcome determinative issue.  Under New York law, a plaintiff must prove the following elements to establish a cause of action based on negligence: (1) the existence of a legal duty; (2) a breach of that duty; (3) that the breach was a proximate cause of the injury; and (4) damages.  *Ellis v. Mildred Elley School Inc.*, 245 A.D.2d 994 (3d Dep't 1997); *see also*, *Japan Airlines Co., Ltd. v. Port Authority of New York and New Jersey*, 178 F.3d 103, 109 (2d Cir. 1999) ("In order to prevail in a negligence action under New York law, the plaintiff must prove (1) that there was a duty owed to the plaintiff, (2) lack of due care by the defendant, (3) injury, and (4) the injury was proximately caused by the defendant's breach of duty.").

"Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." *Ugarriza v. Schmieder*, 46 N.Y.2d 471, 474 (1979); *McCummings v. New York City Transit Auth.*, 81 N.Y.2d 923, 926 (1993).  When an action is based upon a claim of negligence, the plaintiff will generally be entitled to summary judgment only in cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below

any permissible standard of due care, and the plaintiff's conduct either was not really involved (such as with a passenger), or was clearly of exemplary prudence under the circumstances presented. *Andre v. Pomeroy*, 35 N.Y.2d 361, 365 (1974). It is well settled that where, as here, comparative negligence may have contributed to an accident, summary judgment will be precluded. *Karash v. Adetunji*, 56 A.D.3d 726, 727 (2d Dep't 2008). Indeed, courts in New York have held that proof that a dangerous condition is open and obvious does not preclude a finding of liability, however, it is relevant to the issue of comparative negligence. *Cupo v. Karfunkel*, 1 A.D.3d 48, 52 (2d Dep't 2003); *see also*, *Cucuzza v. City of New York*, 2 A.D.3d 389, 390 (2d Dep't 2003)("Even assuming that the hole in question was open and obvious, that only raises a question as to the injured plaintiff's comparative negligence and does not, as a matter of law, negate liability on the part of those who created the defect and/or are responsible for the project.").

As noted above, by her motion, plaintiff is, in part, seeking partial summary judgment on the issue of liability. By reason of the Stipulation (Dkt. #20) entered into by the parties, there is no dispute that defendant owed a legal duty to plaintiff and further, that defendant breached that legal duty. The questions that remain with respect to plaintiff's negligence cause of action are whether defendant's breach was a proximate cause of plaintiff's injuries and assuming a finding of liability on the part of the defendant, what damages plaintiff suffered. In addition to seeking summary judgment on the issue of liability, plaintiff is also seeking the dismissal of defendant's affirmative defenses of assumption of risk and comparative negligence.

In support of her motion for partial summary judgment, plaintiff relies on the opinion of her treating physician, Dr. Lapoint, who opined that the defective pothole condition in the parking lot was a proximate cause of plaintiff's injuries. Dkt. #26, ¶ 4. In addition, plaintiff argues that defendant's expert, Dr. Lawrence B. Bone, confirmed that plaintiff's injury was caused "when she stepped in the side of a pothole in a parking lot of a store." Dkt. #25, pp.105-109. Specifically, Dr. Bone concluded in his December 27, 2006 report that,"**Impression**: Inversion injury to her left ankle, which resulted in an avulsion fracture of the tip of the fibula, and an anterior medial talar injury consistent with a bone bruise and possible small grade 2 osteochondral injury." Dkt. #25, p.107 (emphasis in original). Based on the foregoing, plaintiff summarily concludes that "[t]here can be no dispute that plaintiff caught her left foot in a pothole in the subject parking lot, and that such pothole was a longstanding condition." Dkt. #27, p.6.

As affirmative defenses and in opposition to plaintiff's motion for partial summary judgment, defendant asserts that plaintiff's assumption of risk and comparative negligence are issues of fact to be decided by a jury. Specifically, defendant argues that plaintiff's own testimony establishes that there was an open and obvious condition in the Yorkshire Plaza parking lot thereby creating an issue of fact as to plaintiff's comparative negligence. Dkt. #33, p.4. Indeed, plaintiff testified that prior to the July 13, 2005 incident, she was aware of potholes and had expressed her concern to Dave Horrigan of Save A Lot and to her husband. Dkt. #30, pp.31-32 and p.38. Moreover, defendant asserts that plaintiff chose to push a heavy shopping cart filled with approximately sixty (60) pounds of meat across the parking lot despite its

condition. Plaintiff claims that defendant's affirmative defenses should be dismissed because she testified that she did not observe the specific pothole that caught her left foot prior to the incident. Dkt. #27, p.7. Rather, the plaintiff argues that "she was just pushing a grocery cart, which was stacked with groceries, attempting to reach her truck, and was simply walking from the store when she encountered the defect. The defendant has conceded negligence in allowing the defect to exists." *Id*. As discussed above, the record before this Court reveals a factual discrepancy between the plaintiff's testimony and the testimony of Carol Conrad as to where plaintiff fell in the parking lot. This question of fact, as well as a determination of the credibility of the plaintiff and Ms. Conrad as witnesses, should be left to the jury.

In view of the evidence submitted that plaintiff was aware of the condition of the parking lot prior to July 13, 2005 and in fact, had expressed her concern to Dave Horrigan of Save A Lot and to her husband, as well as plaintiff's decision to push a grocery laden shopping cart through the parking lot, this Court agrees with defendant that an issue of fact exists as to plaintiff's comparative negligence. Moreover, there remains an open question concerning the location of plaintiff's fall. It is for these reasons that this Court concludes that it may not determine the issue of defendant's liability as a matter of law. Accordingly, this Court recommends that plaintiff's motion for partial summary judgment on the issue of liability and to dismiss the affirmative defenses of comparative negligence and assumption of risk be denied.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:   Buffalo, New York
         February 17, 2010

                                           s/ H. Kenneth Schroeder, Jr.
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**